**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

*United States of America v. Alex Jose Tejeda*
Case No. 3:15-cr-00066-TMB-MMS-1

By: THE HONORABLE TIMOTHY M. BURGESS

PROCEEDINGS: ORDER FROM CHAMBERS

The matter comes before the Court on the Final Report and Recommendation ("Final R&R") of the Chief Magistrate Judge,[1] recommending the Court deny Defendant Alex Jose Tejeda's ("Tejeda") Motion to Vacate at Docket 454 and Supplemental Motion at Docket 487 (the "Motion").[2] Tejeda objected to portions of the Initial Report and Recommendation ("Initial R&R").[3] The United States (the "Government") did not respond to Tejeda's objections.[4] The Magistrate Judge addressed Tejeda's objections in the Final R&R; there are no outstanding objections.[5] Pursuant to statute, the Court has conducted a *de novo* review,[6] and for the reasons discussed below, the Court **ACCEPTS and ADOPTS** the Final R&R at Docket 497. Accordingly, the Motion at Dockets 454 and 487 is **DENIED**.

  *A. Background*

The Court assumes the parties' familiarity with the underlying facts and proceedings in this case, relevant portions of which are detailed in the Final R&R.[7] On July 22, 2015, Tejeda was charged with one count of conspiracy to distribute and possess with intent to distribute controlled substances (Count 1), three counts of possession with intent to distribute controlled substances (Counts 2–4), and one count of distribution of methamphetamine and heroin (Count 5).[8] He pleaded not guilty to all counts, and on January 8, 2016, a jury found Tejeda guilty of counts 1, 2,

---

[1] Dkt. 497 (Final Report and Recommendation).
[2] Dkt. 454 (Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody); Dkt. 487 (Supplemental Motion to Vacate Pursuant to 28 U.S.C. § 2255).
[3] Dkt. 495 (Initial Report and Recommendation). Dkt. 496 (Objections to Initial Report and Recommendation).
[4] Dkt. (absence).
[5] *See* Dkt. 497 at 28–30.
[6] 28 U.S.C. § 636(b)(1)(C) ("Within fourteen days after being served with a copy [of the magistrate judge's proposed findings and recommendations], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.").
[7] *See* Dkt. 497 at 2–5.
[8] Dkt. 3 (Indictment); Dkt. 497 at 2.

4, and 5.[9] On September 13, 2017, Tejeda was sentenced to 180 months followed by ten years of supervised release on Counts 1, 2, 4, and 5.[10]

On September 14, 2017, Tejeda noticed his appeal of the verdict,[11] and the Ninth Circuit subsequently found plain error in the special verdict form as to Count 2, also directing this Court to correct jury error on the special verdict form as to Count 5.[12] Tejeda then moved to vacate Count 1 and for resentencing on Count 5.[13] Granting Tejeda's motion,[14] this Court resentenced him on Count 5 to 140 months of imprisonment followed by eight years of supervised release, and dismissed Counts 1, 2, and 4.[15] Tejeda also appealed this judgment;[16] the Ninth Circuit denied his appeal[17] and affirmed this Court's judgment as to Count 5.[18]

Tejeda's co-defendant in this case, Laura Cecelia Johnson ("Johnson"), pleaded guilty in October 2015[19] and was sentenced to a time-served sentence followed by three years of supervised release.[20] She subsequently testified at Tejeda's trial regarding her history of trafficking controlled substances with Tejeda, including a scheme by which Tejeda would acquire controlled substances, leave them in Johnson's purse, retrieve payment from the purse, and conspire with her to later distribute the substances.[21]

Johnson's testimony revealed that during the initial investigation, a confidential informant contacted her for methamphetamine and heroin, and she texted Tejeda to procure drugs, informing him that the informant "wants to know if she can come over. She's getting ready to go to the bank soon, so she wants to know about what time she can come over and pick that up."[22] Tejeda then responded, "I have to get the black [tar heroin]. Tell her to come over."[23] Law enforcement observed Tejeda park his vehicle outside Johnson's residence, "look around nervously as he exited his vehicle," enter her residence, return to his vehicle to retrieve a black bag, reenter the residence, and then return to his vehicle without the bag.[24] Law enforcement pursued Tejeda, and he

---

[9] Dkt. 114 (Jury Verdicts).
[10] Dkt. 265 (Judgment).
[11] Dkt. 259 (Notice of Appeal).
[12] Dkt. 371 (Ninth Circuit Memorandum) at 4, 7; *United States v. Tejeda*, No. 17-30173 (9th Cir., June 12, 2019) (unpublished).
[13] Dkt. 411 (Motion to Vacate the Conspiracy Conviction (Count 1) and the Associated 50-to-499 Gram Methamphetamine Determination and for a Resentencing on the Distribution Conviction (Count 5) Only).
[14] Dkt. 418 (Order Granting Motion to Vacate).
[15] Dkt. 431 (Amended Minute Entry); Dkt. 434 (Judgment).
[16] Dkt. 436 (Notice of Appeal).
[17] Dkt. 452 (Ninth Circuit Order).
[18] Dkt. 451 (Ninth Circuit Memorandum); Dkt. 453 (Ninth Circuit Mandate).
[19] Dkt. 63 (Minute Entry).
[20] Dkt. 176 (Judgment).
[21] Dkt. 497 at 3; Dkt. 283 at 198:1–204:23.
[22] Dkt. 497 at 3; Dkt. 283 at 38:23–39:14; 214:15–215:2.
[23] Dkt. 497 at 3; Dkt. 283 at 215:4–216:4.
[24] Dkt. 497 at 4; Dkt. 284 at 20:2–22:15.

attempted to evade arrest by fleeing first in his vehicle and then on foot.[25] As he ran away, he threw his belongings on the ground; these items were later collected by law enforcement, including Tejeda's wallet.[26] A search warrant of Johnson's residence revealed controlled substances and drug paraphernalia.[27] Upon his processing following arrest, Tejeda was found with additional drugs on his person.[28]

Tejeda first moved *pro se* to vacate his sentence in November 2022.[29] In his *pro se* Motion, Tejeda moved to vacate his sentence on four grounds.[30] First, he alleged violations under *Napue v. Illinois*,[31] arguing that: "[Sargeant] Carson fabricated probable cause and . . . blocked in Mr. Tejeda's vehicle"; "[Detective] Adair[] fabricated probable cause in falsifying two observ[ed] traffic violations"; and "[Detective] Adair[] t[a]mpered with evidence by l[a]ying on the ground Mr. Tejeda's wallet as if it was there" and "[writing] in his police report that the wallet was found [within] the nexus [of] the baggies of control[led] substances."[32] Second, Tejeda argued he received ineffective assistance of counsel because his attorney "[failed] to file [a] 'Motion to Suppress Illegal Search and Seizure' and [failed] to file [a] 'Motion to Suppress Search Warrant'" regarding alleged fabrication of probable cause at sentencing.[33] Third, he alleged he received ineffective assistance of counsel from his attorney at resentencing because his counsel "failed to refile [a] 'Motion to Suppress the Search Warrant'" and for "[failing] to refile [a] 'Motion to Vacate (Count 5).'"[34] Fourth, Tejeda alleged violations of *Brady v. Maryland*,[35] alleging that "the [G]overnment withheld Ondra[']s testimony which impeached [Detective] Adair's failure to signal" and that the [G]overnment "withheld Dkt: 179."[36]

Tejeda was given time to confer with counsel,[37] and moved to continue the filing deadline several times.[38] Tejeda then filed a supplemental brief with assistance of counsel on January 15, 2024.[39]

In his Supplemental Motion, Tejeda first asks the Court to "rule [on] [his] *pro se* issues" raised in his earlier motion regarding the original vehicle stop and search and his trial for Count 5.[40] He then provides three new bases for relief.[41] First, he asserts that he "did not receive effective

---

[25] Dkt. 497 at 4; Dkt. 284 at 24:19–27:14; Dkt. 283 at 51:18–23.
[26] Dkt. 497 at 4; Dkt. 283 at 52:9–20, 54:15–59:8; Dkt. 284 at 27:18–25, 34:10–35:25.
[27] Dkt. 497 at 4; Dkt. 283 at 64:12–17; 137:8–143:25; Gov't Exs. 35–37.
[28] Dkt. 497 at 4; Dkt. 284 at 53:2–23; 141:22–144:19; Gov't Ex. 48.
[29] Dkt. 454.
[30] *Id.* at 1–13.
[31] 360 U.S. 264 (1959).
[32] Dkt. 454 at 4.
[33] *Id.* at 5.
[34] *Id.* at 7.
[35] 373 U.S. 83 (1963).
[36] Dkt. 454 at 8.
[37] Dkt. 460 (Text Order).
[38] Dkts. 464, 468, 473, 477, 480, 485, 486 (Motions to Continue).
[39] Dkt. 487.
[40] *Id.* at 4–5.
[41] *Id.* at 6–16.

assistance of counsel when his trial counsel failed to move to dismiss Count [5]."[42] He argues that the special verdict form for Count Five "suffers from the same constitutional infirmity that resulted in the dismissal of Counts [2] and [4]" because it added a "reasonably foreseeable" element to the possession statutory language of 21 U.S.C. § 841(a)(1) regarding Tejeda's possession of controlled substances.[43] Because the Ninth Circuit held in *United States v. Tejeda*[44] that the addition of "reasonably foreseeable" to the special verdict form for Count 2 was plain error and "prejudiced Tejeda's substantial rights," he argues this outcome "should have spurred sentencing counsel to advocate for the same result for Count 5 at the same time counsel moved [to] vacate Counts 4 and 1" and that counsel's failure to do so constituted a "miscarriage of justice."[45] He suggests that adding "reasonably foreseeable" to Count 5 was only proper "if, *and only if*, it was tied to Count 1 under the *Pinkerton* theory" of conspiracy liability but that "vacating Count 1 rendered the special verdict form for Count 5 legally impermissible."[46] He argues counsel's failure to move to vacate Count 5 "put him in the untenable position of arguing for the vacation of Count [5] for the first time on appeal under the plain error standard, which the Ninth Circuit found he could not meet."[47]

Next, Tejeda argues that he "did not receive effective assistance of counsel when his trial counsel failed to argue his career offender status."[48] He suggests that he was incorrectly sentenced as a career criminal based on a federal conviction in the Northern District of West Virginia for Assault with a Dangerous Weapon with Intent to do Bodily Harm—Aiding and Abetting, which this Court considered a crime of violence under U.S.S.G. § 4B1.2.[49] However, he argues that under *United States v. Castillo*,[50] "the Ninth Circuit determined that inchoate crimes [such as aiding and abetting] do not qualify for career criminal status," and as such, his "inchoate offense does not count as a violent offense."[51] Although *Castillo* was decided after his sentencing, Tejeda suggests that *United States v. Ellis*,[52] an unpublished out-of-circuit case "decided two years before [his] resentencing," is "persuasive" because the Eleventh Circuit held that a Georgia inchoate assault offense was a non-violent offense under U.S.S.G. § 4B1.2.[53] Therefore, Tejeda asserts, his "counsel should have made the argument that [Tejeda's] aiding and abetting assault offense was not a violent offense."[54]

---

[42] *Id.* at 6.
[43] *Id.* at 6–7.
[44] No. 17-30173 (2019) ("*Tejeda I*").
[45] *Id.* at 7–8.
[46] *Id.* at 8.
[47] *Id.* at 11.
[48] *Id.*
[49] *Id.* at 11–12.
[50] 69 F.4th 648 (9th Cir. 2023).
[51] Dkt. 487 at 13.
[52] *United States v. Ellis*, 736 F. App'x 855 (11th Cir. 2018) (*Ellis I*); *see also United States v. Ellis*, No. 19-10156, 2023 WL 4447020 (11th Cir. July 11, 2023)) (*Ellis II*).
[53] Dkt. 487 at 14.
[54] *Id.* at 13–14.

Last, Tejeda argues that he "was not read his supervised release conditions" at his initial sentencing or resentencing.[55] He suggests this is mandatory pursuant to *United States v. Montoya*,[56] and as such "[t]his Court should remand for resentencing."[57]

The Government filed a consolidated Response in Opposition to Tejeda's *pro se* and Supplemental Motions.[58] First, the Government asserted that Tejeda's allegations of *Napue* violations fail because they were procedurally barred and failed to establish that the disputed testimony was material to the existence of probable cause.[59] Next, the Government disputed Tejeda's ineffective assistance of counsel claims because the Court found that officers had probable cause to stop his vehicle on suspicion of drug trafficking such that a motion to suppress would have been meritless and the Ninth Circuit held that a motion to suppress was untimely prior to resentencing.[60] Regarding Tejeda's *Brady* violations, the Government argued that his claims were procedurally barred and otherwise failed to establish that the prosecution suppressed trial testimony.[61] Responding to Tejeda's arguments regarding his conviction on Count 5, the Government noted that his claims are procedurally barred and further argued that the jury instructions for Count 5 were proper and that his counsel was not ineffective in declining to move to vacate because his conviction under principal liability was supported by sufficient evidence to sustain it.[62] Last, the Government maintained that Tejeda's claims regarding the career offender enhancement and his conditions of supervision also fail because he did not raise them on direct appeal, his guidelines were properly discussed at sentencing, and the Court complied with *Montoya* by informing Tejeda of his conditions at sentencing and incorporating the presentence report by reference.[63]

### B. Initial Report and Recommendation

The Chief Magistrate Judge filed his initial Report and Recommendation (the "Initial R&R") on July 3, 2024, recommending the Court deny the Motion.[64] First, the Chief Magistrate Judge held that Tejeda's *pro se* arguments, excluding his ineffective assistance of counsel claims, fail because they are procedurally barred, and otherwise lack merit.[65] Noting that the Ninth Circuit either already ruled on Tejeda's claims regarding the officers' testimony in response to his motion for new trial, or that "Tejeda [did] not offer a reason [such] argument[s] could not have been raised on immediate appellate review," the Chief Magistrate Judge held that his arguments were in procedural default.[66] Further, responding to the merits, the Chief Magistrate Judge held that Tejeda's claims as to whether Sergeant Carson made false statements, whether Detective Adair or

---

[55] *Id.* at 14.
[56] 82 F.4th 640 (9th Cir. 2023).
[57] Dkt. 487 at 14–15.
[58] Dkt. 493.
[59] *Id.* at 24–32.
[60] *Id.* at 34–36.
[61] *Id.* at 36–40.
[62] *Id.* at 42–53.
[63] *Id.* at 53–59.
[64] Dkt. 495.
[65] *Id.* at 6–13.
[66] *Id.* at 9.

the Government were being deceitful in depicting Tejeda's wallet on the ground, and whether law enforcement lied about observing Tejeda make an illegal U-turn each failed to establish *Napue* violations and that the disputed testimony was immaterial.[67] The Chief Magistrate Judge also rejected Tejeda's ineffective assistance of counsel claim regarding his counsel's failure to file a motion to suppress because "law enforcement had ample probable cause to initiate the traffic stop."[68] Responding to Tejeda's arguments regarding *Brady* violations, the Chief Magistrate Judge held these claims also fail.[69] Regarding Officer Ondra's testimony, this claim was held to fail because "Tejeda is not pointing to exculpatory information or materials—just testimony elicited by his own attorney during cross-examination" and "absent something more," such testimony does not amount to a *Brady* violation.[70] Regarding the transcript of Detective Adair's testimony, the Chief Magistrate Judge held that "*Brady* is not implicated" because "[t]his testimony occurred months before Tejeda's federal trial, and Tejeda was present for that hearing."[71]

Next, the Chief Magistrate Judge concluded that Count 5 should not be vacated.[72] First, the Chief Magistrate Judge held that Tejeda's ineffective assistance of counsel claim regarding his counsel's failure to file a motion to dismiss Count 5 fails because "[t]he Ninth Circuit assumed for the purposes of the opinion that there was plain error" and therefore "it was not the standard of review that prompted the court to affirm the sentence."[73] Rather, the Chief Magistrate Judge concluded that the Ninth Circuit "found that any flaw in the jury instruction regarding *Pinkerton* [liability] was immaterial because there was overwhelming evidence that Tejeda was guilty as a principal actor."[74] Therefore, the Chief Magistrate Judge held that, "regarding the jury instruction that Tejeda argues is flawed, this Court finds the Ninth Circuit opinion to both substantively negate the matter and to procedurally bar this claim from proceeding via a collateral attack."[75] Further, although the jury verdict form "contain[ed] the same error that proved fatal to the possession with intent to distribute counts," this error is not material because "here, . . . the evidence proving that Tejeda distributed controlled substances is overwhelming, and his intent to do so has been established."[76]

The Chief Magistrate Judge also concluded that Tejeda's counsel's failure to challenge application of the sentencing enhancement to his career offender status did not constitute ineffective assistance of counsel.[77] First, disagreeing with the Government, the Chief Magistrate Judge held that Tejeda was not barred from making this claim because an "ineffective assistance of counsel [claim] . . . is cognizable itself under Sec. 2255, even when it relates to sentencing errors," and courts "allow for

---

[67] *Id.* at 11–12.
[68] *Id.* at 12–13.
[69] *Id.* at 13.
[70] *Id.*
[71] *Id.*
[72] *Id.* at 14.
[73] *Id.* at 17.
[74] *Id.*
[75] *Id.* at 18.
[76] *Id.*
[77] *Id.*

-6-

such arguments to be made via direct appeal."[78] But on the merits, the Chief Magistrate Judge concluded that "Tejeda substantively does not make a viable Sec. 2255 claim here."[79] Although the Chief Magistrate Judge found Tejeda's claim established a showing of prejudice because it was "sufficiently likely that Tejeda would have received a lower sentence had the sentencing court found a lower guidelines range," his counsel's failure to challenge the enhancement was not unreasonable because *Castillo* merely "clarified that inchoate crimes are not 'controlled substance offenses' under the guidelines" and as such "did not constitute an intervening change in law."[80]

Last, regarding Tejeda's claim that he was not read his conditions of supervised release at sentencing, the Chief Magistrate Judge concluded that this Court "complied with the substantive requirements of *Montoya*."[81] Construing Tejeda's *Montoya* argument as an ineffective assistance of counsel claim, the Chief Magistrate Judge noted that at sentencing, "the Court inquired whether the Revised Presentence Report had been shared with Tejeda, asked him whether he understood it and whether he had an opportunity to ask questions about it, and reviewed the special conditions with the defendant."[82] As such, the Chief Magistrate Judge held that while it was not unreasonable for Tejeda's counsel to challenge his sentence on this basis, ultimately this Court "complied with *Montoya*."[83]

### C. Objections to the Initial R&R

Tejeda objected to the Initial R&R, lodging two objections.[84] He urged the Court to grant his Motion to Vacate and "overrule the Report and Recommendations of the [Chief] Magistrate Judge," arguing that "Count Five of the Indictment should be dismissed" and that, "[i]n the alternative, [he] should be resentenced without being a career offender."[85] Further, if the Court declines to grant his Motion to Vacate, Tejeda asked the Court to "grant a Certificate of Appealability as to both issues."[86]

First, Tejeda again argued that he "did not receive effective assistance of counsel when his attorney failed to move to dismiss Count 5 despite the fact that that Count suffered from the same constitutional infirmity as the dismissed Counts [2] and [4]."[87] He argued that his attorney's failure to raise this issue "resulted in the . . . Ninth Circuit reviewing that count under the plain error standard, rather than *de novo*, and affirming."[88] Although the Chief Magistrate Judge acknowledged that "Count 5 suffers from the same instructional infirmity as Count [2] and Count [4]" by adding the phrase "which was either known to [Tejeda] or reasonably foreseeable," Tejeda

---

[78] *Id.* at 20.
[79] *Id.* at 21.
[80] *Id.* at 26.
[81] *Id.*
[82] *Id.* at 27.
[83] *Id.*
[84] Dkt. 496.
[85] *Id.* at 16.
[86] *Id.* at 17.
[87] *Id.* at 3.
[88] *Id.*

suggested that the Chief Magistrate Judge erred in finding that "the Ninth Circuit 'assumed for the purposes of the opinion that there was plain error.'"[89] Rather, Tejeda suggested that the Ninth Circuit "review[ed] the record in total" and "[held] that Mr. Tejeda could not meet all three requirements for plain error."[90] As such, he argued that his counsel's failure to move to dismiss Count 5 "constituted deficient performance" that "prejudiced" him, such that he meets the ineffective assistance of counsel standard under *Strickland v. Washington*.[91]

Second, Tejeda argued that his "counsel did not provide effective assistance of counsel when he failed to argue against Mr. Tejeda's career offender status."[92] He again suggested that the sentencing enhancement should not have applied because "his West Virginia conviction did not qualify as a crime of violence within the meaning of the career criminal statute."[93] Tejeda agreed with the Chief Magistrate Judge's conclusion that he satisfied *Strickland's* prejudice prong because absent the enhancement, he "likely . . . would have received a lower sentence had the sentencing court found a lower guidelines range."[94] However, he contested the Chief Magistrate Judge's conclusion that "Tejeda cannot show deficient performance" on two bases.[95]

First, he noted that in *United States v. Castillo*,[96] "the Ninth Circuit determined that inchoate substance abuse crimes do not qualify for career criminal status" and argued that "he is . . . entitled to the benefit of the decision because *Castillo* "was decided after [his] sentencing date" but "before his sentencing became final."[97] Further, noting that "the *Castillo* finding had been in the works in other courts of appeal, and that the Supreme Court opinion upon which *Castillo* was based had already been decided by the time [he] was resentenced," Tejeda suggested that his counsel was ineffective because "failure to anticipate changes in the law which have been 'sufficiently foreshadowed in existing case law' can constitute deficient performance."[98]

Next, he contested the Chief Magistrate Judge's conclusion that U.S.S.G. § 4B1.2 defines "crime of violence" as any offense involving "the use, attempted use, or threatened use of physical force" and that *Castillo* applied only to inchoate controlled substances offenses, and not to inchoate violence offenses.[99] Although Tejeda admitted that the Ninth Circuit has not yet addressed *Castillo's* applicability to inchoate crimes of violence, he suggested that the Eleventh Circuit similarly held that a "controlled substance offense" does not include inchoate crimes and later applied this holding to a state party-to-an-assault statute, concluding that it does not qualify as a

---

[89] *Id.* at 5, 9.

[90] *Id.* at 9–10.

[91] *Id.* at 10 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

[92] *Id.*

[93] *Id.* at 11.

[94] *Id.* at 12.

[95] *Id.*

[96] 69 F.4th 648 (9th Cir. 2023).

[97] Dkt. 496 at 13 (citing *Teague v. Lane*, 489 U.S. 288 (1989)).

[98] *Id.* at 14 (citing *Leeds v. Russell*, 75 F.4th 1009 (9th Cir. 2023)).

[99] *Id.*

-8-

crime of violence under U.S.S.G. § 4B1.2.[100] As such, he argues that his "counsel was deficient in failing to argue" that his conviction was not a crime of violence at sentencing.[101]

### D. Final R&R

The Chief Magistrate Judge then issued the Final R&R, affirming his recommendation that Tejeda's Motion should be denied.[102] First, responding to Tejeda's argument regarding his Count 5 conviction, the Chief Magistrate Judge disagreed with Tejeda's interpretation of the Ninth Circuit's holding affirming his resentencing, noting that "[t]he Ninth Circuit affirmed his sentence because it did not find the complained of error to have been material" and therefore "did not address whether there was plain error because the matter was more readily disposed of via the materiality prong."[103] Second, responding to Tejeda's argument regarding his career offender enhancement, the Chief Magistrate Judge observed, as Tejeda conceded, that "[t]here do not yet appear to be any cases in the Ninth Circuit addressing *Castillo's* applicability to inchoate crimes of violence" and moreover that the Eleventh Circuit cases he cites were decided after his resentencing.[104] Further, even "[a]ssuming both that the Eleventh Circuit's decisions would apply favorably to him, and that those opinions were correctly decided, [he] has not established that his prior counsel's representation fell objectively below professional standards."[105] Thus, the Chief Magistrate Judge "[could not] find ineffective assistance of counsel here."[106]

### E. Legal Standard

1. *De Novo* Review.

The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1), which provides that a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and shall review objections *de novo*.[107] For topics on which no objections are filed, "[n]either the Constitution nor [28 U.S.C. § 636(b)(1)] requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct."[108]

---

[100] *Id.* at 15–16 (citing *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023); *Ellis II*, No. 19-10156, 2023 WL 4447020 (11th Cir. July 11, 2023)).
[101] *Id.* at 16.
[102] Dkt. 497.
[103] *Id.* at 28.
[104] *Id.* at 29.
[105] *Id.*
[106] *Id.*
[107] 28 U.S.C. § 636(b)(1).
[108] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Ramos*, 65 F.4th 427, 434 (9th Cir. 2023) (articulating that "the district court ha[s] no obligation to provide individualized analysis of each objection.").

2. Ineffective Assistance of Counsel.

Under 28 U.S.C. § 2255(a), a district court may "vacate, set aside or correct the sentence" of an imprisoned federal defendant if "the sentence was imposed in violation of the Constitution or laws of the United States." The Sixth Amendment right to counsel provides the right to effective assistance of counsel, including the right to effective assistance at the trial level.[109] A claim pursuant to § 2255 alleging ineffective assistance of counsel is therefore rooted in the Sixth Amendment's right to counsel. A defendant alleging ineffective assistance of counsel must satisfy the two-prong test set forth in *Strickland v. Washington*.[110]

First, "the defendant must show that counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[111] Deficient performance requires a showing that trial counsel's representation "fell below the objective standard of reasonableness," as measured by prevailing professional norms.[112] There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[113]

Second, "the defendant must show that the deficient performance prejudiced the defense," which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[114] To demonstrate prejudice, the defendant must show that "there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[115] "A reasonable probability that the results of the proceeding would have been different is 'a probability sufficient to undermine confidence in the outcome.'"[116] While a defendant need not show prejudice by a preponderance of the evidence, the defendant must do more "than simply assert[ ] an error that could theoretically have some effect on the outcome of the proceeding."[117]

The defendant carries the burden of proving he is entitled to relief.[118] Failure to meet either prong is fatal to a defendant's claim.[119] "Unless a defendant makes both showings, it cannot be said that

---

[109] *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984); *Evitts v. Lucey*, 469 U.S. 387, 392 (1985).
[110] 466 U.S. 668 (1984).
[111] *Id.* at 687.
[112] *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688).
[113] *Strickland*, 466 U.S. at 689.
[114] *Id.*
[115] *Id.* at 694.
[116] *United States v. Applebury*, No. 3:17-cr-00121-TMB-1, 2020 WL 4883936, at *3 (D. Alaska Aug. 19, 2020) (quoting *Strickland*, 466 U.S. at 694).
[117] *Id.* (citing *Duncan v. Ornoski*, 528 F.3d 1222, 1246 (9th Cir. 2008)).
[118] *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002).
[119] *Gonzalez v. Wong*, 667 F.3d 965, 987 (9th Cir. 2011) ("Because failure to meet either prong is fatal to [a defendant's] claim, there is no requirement that [courts] 'address both components of the inquiry if the defendant makes an insufficient showing on one.'") (quoting *Strickland*, 466 U.S. at 697).

the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."[120]

### F. Discussion

Tejeda filed no objections to the Final R&R. Nonetheless, having reviewed *de novo* the parties' briefing, the Initial and Final R&Rs, Tejeda's objections, and the record, the Court concludes that Tejeda's objections are properly addressed in the Final R&R. Addressing each objection to the Initial R&R in turn, the Court agrees with and adopts the analysis thoroughly laid out in the Final R&R.

1. The Magistrate Judge properly rejected Tejeda's objection that his counsel was ineffective by failing to move to dismiss Count 5.

First, the Court finds that the Magistrate Judge properly rejected Tejeda's objection to the Court's conclusion that there was no basis for his ineffective assistance of counsel claim based on counsel's failure to move to dismiss Count 5. Tejeda argues that he received ineffective assistance of counsel when his attorney failed to move to dismiss Count 5 because the verdict form included the same language—that the distribution of controlled substances "was either known to [Tejeda] or reasonable foreseeable"—as Counts 2 and 4.[121] However, because his attorney declined to move to dismiss Count 5 at resentencing, and Tejeda raised this issue for the first time on appeal, Tejeda argues the Ninth Circuit applied "the highly stringent plain error standard rather than the much more generous de novo review standard."[122] He suggests the Chief Magistrate Judge's decision was "based upon a flawed reading of the record" because it erroneously held that the Ninth Circuit "assumed for the purposes of the opinion that there was plain error."[123]

The Court agrees with the Chief Magistrate Judge that the Ninth Circuit's affirmation of Tejeda's resentencing was predicated on a finding that any error "did not 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'".[124] The Ninth Circuit "review[ed] only for plain error" and clarified that under that standard, reversal was only warranted if any error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings" based on "all circumstances at trial including the strength of the evidence against the defendant."[125] Notably, the Ninth Circuit did not reach whether any "error [was] plain [or] affect[ed] [Tejeda's] substantial rights.".[126] Rather, the Ninth Circuit found this "final, discretionary prong" dispositive of Tejeda's appeal, reasoning that after "consider[ing] all the relevant circumstances, . . . and the evidence presented at trial," Tejeda was guilty as a principal actor such that the *Pinkerton* liability instruction

---

[120] *Id.*
[121] Dkt. 496 at 5.
[122] *Id.* at 10.
[123] *Id.* at 7, 9.
[124] Dkt. 497 at 17 (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).
[125] Dkt. 451 at 2 (*United States v. Perez*, 116 F.3d 840, 847–48 (9th Cir. 1997) (en banc)).
[126] *Id.*

-11-

was immaterial and "a different decision by the jury would be 'extremely unlikely.'"[127] Further, based on this evidence, the Ninth Circuit expressly stated that "the greater threat to the integrity and fairness of judicial proceedings would arise from the reversal of a conviction on flawed jury instructions rather than from affirming an imperfect verdict."[128] Thus, the Court is unpersuaded by Tejeda's argument that the Ninth Circuit's application of plain error review was dispositive of its affirmation of his resentencing as to Count 5.

As the Ninth Circuit held that the *Pinkerton* jury instruction did not "seriously affect the fairness, integrity or public reputation of judicial proceedings," the Court agrees with the Chief Magistrate Judge that "the Ninth Circuit's opinion . . . both substantively . . . and procedurally bar[s] this claim."[129] Given the Ninth Circuit's consideration of the "strong and convincing evidence" at trial showing Tejeda's actions and intent to distribute, the Court concludes that Tejeda has not demonstrated that he was prejudiced by his counsel's failure to move to vacate Count 5, nor that in doing so his counsel "made errors so serious that counsel was not functioning as . . . guaranteed . . . by the Sixth Amendment."[130] Therefore, the Chief Magistrate Judge properly rejected Tejeda's objection that his counsel was ineffective by failing to move to dismiss Count 5.

2. <u>The Magistrate Judge properly rejected Tejeda's objection that his counsel was ineffective by failing to challenge his career offender enhancement.</u>

Next, the Court finds that the Magistrate Judge properly rejected Tejeda's objections to the Court's conclusion that there was no basis for his ineffective assistance of counsel claim based on his attorney's failure to challenge his career offender enhancement. Under U.S.S.G. § 4B1.1, a defendant qualifies as a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;
>
> (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and
>
> (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.[131]

---

[127] *Id.* at 2–3 (quoting *United States v. Perez*, 116 F.3d 840, 847–48 (9th Cir. 1997) (en banc); *United States v. Alferahin*, 433 F.3d 1148, 1159 (9th Cir. 2006)).
[128] *Id.* at 3.
[129] Dkt. 497 at 18.
[130] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[131] U.S.S.G. § 4B1.1(a).

U.S.S.G. § 4B1.2(a) defines a "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).[132]

At the time of Tejeda's sentencing and resentencing, the Guidelines further stated in an application note that a "'crime of violence' . . . include[s] the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense."[133]

Tejeda was sentenced and resentenced as a career criminal offender under U.S.S.G. § 4B1.1 based on his conviction in the Northern District of West Virginia for Assault with a Dangerous Weapon with Intent to do Bodily Harm—Aiding and Abetting in violation of 18 U.S.C. §§ 2, 7(3) and 113(a)(3).[134] Because Tejeda suggests his West Virginia conviction does not qualify as a crime of violence under U.S.S.G. § 4B1.2, he argues he received ineffective assistance of counsel when his attorney did not object to his career offender enhancement.[135]

As a threshold matter, the Court agrees with the Chief Magistrate Judge that Tejeda has satisfied the prejudice element of his ineffective assistance of counsel claim.[136] Absent the career offender sentencing enhancement, Tejeda's guideline range would have been 63 to 78 months of imprisonment rather than 262 to 327 months.[137] As Tejeda was sentenced to 140 months of imprisonment, the Court agrees that it is "sufficiently likely that Tejeda would have received a lower sentence had the sentencing court found a lower guidelines range."[138] Therefore, Tejeda has satisfied the prejudice element of his claim under *Strickland*.

However, Tejeda has not established that his counsel's actions constituted deficient performance. Tejeda suggests that his West Virginia conviction is not a crime of violence under U.S.S.G.

---

[132] U.S.S.G. § 4B1.2(a).
[133] At the time of Tejeda's sentencing and resentencing, this provision was included in application note 1 to U.S.S.G. § 4B1.2(b). It was subsequently moved to the guideline text at U.S.S.G. § 4B1.2(d). *See* Amendment 822 to the U.S. Sentencing Guidelines.
[134] *United States v. Tejeda*, No. 1:12-CR-00114 (N.D. W. Va); *see* Dkt. 419 (Sealed Presentence Investigation Report) at 13, 18.
[135] Dkt. 496 at 10–11.
[136] Dkt. 497 at 23–24.
[137] *Id.*; Dkt. 419 at 1.
[138] *Id.*

§ 4B1.2(a) and that he "was improperly sentenced as a career criminal" for several reasons.[139] First, he argues that pursuant to the Ninth Circuit's opinion in *United States v. Castillo*, "this inchoate offense does not count as a violent offense."[140] Second, although *Castillo* was decided after his sentencing, he argues "he is . . . entitled to the benefit of the decision" because it was "decided before his sentencing became final."[141] Third, he suggests that because *Kisor v. Wilke*[142] and *Ellis I* were decided prior to Tejeda's resentencing, and because the Eleventh Circuit subsequently analyzed inchoate offenses under U.S.S.G. § 4B1.2 in *United States v. Dupree*[143] and *Ellis II*,[144] this issue was "sufficiently foreshadowed in existing case law" and should have prompted his counsel to challenge the enhancement.[145] Fourth, he suggests that "[t]here is nothing in [his] West Virginia Indictment that indicates he personally used, attempted to use, or threatened the use of physical force" under U.S.S.G. § 4B1.2(a)(1).[146]

The Court is unpersuaded by Tejeda's arguments. First, the Court agrees with the Chief Magistrate Judge that "Tejeda . . . incorrectly summarizes *Castillo*."[147] In that case, the Ninth Circuit held that a drug conspiracy conviction was not a "controlled substance offense" for the purposes of the career offender enhancement because it was an inchoate offense, and "the text of § 4B1.2(b) unambiguously [did] not include inchoate offenses."[148] However, the Ninth Circuit did not extend its holding to the text of § 4B1.2(a) defining a crime of violence, as Tejeda suggests; in fact, the court's analysis suggests the opposite. The court noted that "the Guidelines distinguish between inchoate offenses and underlying substantive offenses," and further acknowledged that "for career offender purposes, the guideline's text includes an inchoate offense—'attempted use'—in the definition of a 'crime of violence,' whereas it does not include any inchoate offenses in the definition of a 'controlled substance offense.'"[149] Therefore, the Court agrees with the Chief Magistrate Judge that *Castillo* did not present "an intervening change of law" in the Ninth Circuit's interpretation of U.S.S.G. § 4B1.2(a) that should have prompted his counsel to challenge the sentencing enhancement. Moreover, *Castillo* was decided approximately six months after the Ninth Circuit's affirmation of Tejeda's resentencing took effect, and therefore it could not have prompted his attorney to challenge the enhancement at his resentencing, let alone his initial sentencing.[150] As Tejeda concedes, "[t]here do not yet appear to be any cases in the Ninth Circuit addressing *Castillo's* applicability to inchoate crimes of violence" that could have provided his counsel authority to do so.[151]

---

[139] *Id.* at 14.
[140] *Id.*
[141] *Id.* at 13.
[142] 588 U.S. 558 (2019).
[143] 57 F.4th 1269 (11th Cir. 2023).
[144] No. 19-10156, 2023 WL 4447020 (11th Cir. July 11, 2023).
[145] Dkt. 496 at 14, 16.
[146] *Id.* at 16.
[147] Dkt. 497 at 26.
[148] *United States v. Castillo*, 69 F.4th 648, 664 (9th Cir. 2023).
[149] *Id.* at 652.
[150] *See Castillo* 69 F.4th 648 (providing decision date of May 31, 2023); Dkt. 453 (USCA Mandate) (providing date of October 28, 2022).
[151] Dkt. 496 at 15.

Next, the Court agrees with the Chief Magistrate Judge that "Tejeda has not established that his prior counsel's representation fell objectively below professional standards" based on his other cited authorities.[152] Tejeda suggests that the U.S. Supreme Court's decision in *Kisor v. Wilke* and the Eleventh Circuit's opinions in *United States v. Dupree* and *Ellis I* and *II* should have prompted his counsel to challenge the enhancement.[153] However, *Kisor v. Wilke* considered whether an agency's interpretation of its own regulations must be reasonable; it did not consider whether inchoate offenses are included as crimes of violence under § 4B1.2(a).[154] Further, although the Eleventh Circuit in *United States v. Dupree* rearticulated the Ninth Circuit in *Castillo* by concluding that "[t]he definition of 'controlled substance offense' in § 4B1.2(b) of the Sentencing Guidelines does not include inchoate offenses like conspiracy and attempt," the court again did not reach whether inchoate offenses are included under § 4B1.2(a), and it was decided approximately two months following the Ninth Circuit's affirmation of Tejeda's resentencing.[155]

Nor does the Court find Tejeda's citation to *Ellis I* or *II* persuasive. Tejeda argues that *Ellis I* should have prompted his attorney to challenge his sentencing enhancement.[156] However, in *Ellis I*, decided in 2018, the Eleventh Circuit merely "determin[ed] that Georgia aggravated assault qualifies as a 'crime of violence' under . . . [U.S.S.G.] § 4B1.2" and remanded to allow the district court to determine whether "Georgia conviction for party to the crime of aggravated assault qualifies as a crime of violence under" that provision.[157] Therefore, because it did not determine whether Georgia's party to a crime statute was a crime of violence, *Ellis I* could not have "sufficiently foreshadowed" the issue to warrant challenge by Tejeda's counsel.[158]

The Court is similarly unpersuaded by Tejeda's citation to *Ellis II.* In *Ellis II*, the Eleventh Circuit did reach the issue of inchoate offenses under U.S.S.G. § 4B1.2(a), holding that Georgia's party to a crime statute criminalizing the inchoate offense of "advis[ing], encourag[ing], or counsel[ing]" another to commit aggravated assault was not a crime of violence under that guideline provision.[159] However, *Ellis II* was decided in 2023 approximately nine months after the Ninth Circuit's affirmation of Tejeda's resentencing took effect, and moreover is out-of-circuit unpublished authority.[160] Although a "counsel [may] perform deficiently when they fail to 'make, or at least to evaluate, an argument that is sufficiently foreshadowed in existing case law,'"[161] the

---

[152] Dkt. 497 at 29.
[153] Dkt. 496 at 14–16.
[154] *See Kisor*, 588 U.S. at 576.
[155] *United States v. Dupree*, 57 F.4th 1269, 1280 (11th Cir. 2023)
[156] Dkt. 496 at 16.
[157] *Ellis I*, 736 F. App'x 855, 860, 861 (11th Cir. 2018).
[158] Dkt. 496 at 14, 16.
[159] *Ellis II*, No. 19-10156, 2023 WL 4447020, at *1, 4 (11th Cir. July 11, 2023).
[160] *Id.*
[161] *Leeds v. Russell*, 75 F.4th 1009, 1022 (9th Cir. 2023) (quoting *Bridges v. United States*, 991 F.3d 793, 804 (7th Cir. 2021)).

"reasonableness standard does not require counsel to predict changes in the law[,]"[162] nor may counsel's "failure to predict future changes in the law . . . be considered ineffective assistance."[163] The Court agrees with the Chief Magistrate Judge that "Tejeda's counsel did not err by omitting this defense" because the issue of inchoate offenses under § 4B1.2(a) was not "sufficiently foreshadowed" by the courts at the time of his sentencing or resentencing.[164]

Last, the Court is unpersuaded by Tejeda's argument that "[t]here is nothing in [his] West Virginia Indictment that indicates he personally used, attempted to use, or threatened the use of physical force" under U.S.S.G. § 4B1.2(a)(1).[165] Tejeda was convicted of Assault with a Dangerous Weapon with Intent to do Bodily Harm—Aiding and Abetting.[166] 18 U.S.C. § 113(a)(3) criminalizes "[a]ssault with a dangerous weapon, with intent to do bodily harm, by a fine under this title or imprisonment for not more than ten years, or both."[167] Further, under 18 U.S.C. § 2(a), "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."[168] Therefore, Tejeda was convicted of a federal offense "punishable by imprisonment for a term exceeding one year[] that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another."[169] The Court concludes that the Chief Magistrate Judge properly rejected Tejeda's objection that his counsel was ineffective by failing to challenge his career offender enhancement.

3. The Court denies Tejeda's request for a Certificate of Appealability.

Last, the Court denies Tejeda's request for a Certificate of Appealability ("COA") as to both issues "[i]n the event this Court declines to grant [his] Motion to Vacate."[170] A COA is required to appeal a petition brought under 28 U.S.C. § 2255.[171] Under the federal rules governing § 2255 procedures, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."[172] Where a petitioner makes "a substantial showing of the denial of a constitutional right," a COA should be issued.[173] This standard requires that the petitioner "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the

---

[162] *Id.* at 1018.
[163] *Gerard v. Gootkin*, 856 F. App'x 645, 647 (9th Cir. 2021) (citing *United States v. Chambers*, 918 F.2d 1455, 1461 (9th Cir. 1990)).
[164] Dkt. 497 at 26; *Leeds*, 75 F.4th at 1022.
[165] Dkt. 496 at 16.
[166] Dkt. 419 at 18.
[167] 18 U.S.C. § 113(a)(3)
[168] 18 U.S.C. § 2(a).
[169] U.S.S.G. § 4B1.2(a)(1).
[170] Dkt. 496 at 17.
[171] 28 U.S.C. § 2253(c)(1)(B); *United States v. Asrar*, 116 F.3d 1268, 1269 (9th Cir. 1997).
[172] Rule 11(a), Rules Governing § 2255 Proceedings.
[173] 28 U.S.C. § 2253(c)(2).

issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further."[174]

However, Tejeda's petition does not meet this standard. For the same reasons the Court denies his ineffective assistance of counsel claims above, the Court finds that Tejeda has failed to make a substantial showing that he was denied a constitutional right or that the issues are debatable among reasonable jurists. Accordingly, the Court declines to issue a COA in this action.

### G. Conclusion

Upon a *de novo* review, the Court agrees with the Chief Magistrate Judge's conclusion that the Motion should be denied. Accordingly, the Court **ACCEPTS AND ADOPTS** the Final R&R at Docket 497 and **DENIES** the Motion at Dockets 454 and 487.

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

DATE: November 1, 2024.

---

[174] *United States v. Greene*, No. 3:09-CR-00053-1-TMB, 2015 WL 13670726, at *1 (D. Alaska Apr. 14, 2015) (quoting *Muth v. Fondren*, 676 F.3d 815, 822–23 (9th Cir. 2012)).